UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN JACKSON,

Plaintiff,

-against-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

1:18-cv-04569 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Karen Jackson brings this action challenging the Commissioner of Social

Security's ("Commissioner" or "Defendant") final decision that Plaintiff was not entitled to

disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-

433. Currently pending are the parties' cross motions for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c). ECF Nos. 12; 16-17. After considering the parties' submissions, Plaintiff's

motion is **GRANTED** and Defendant's motion is **DENIED**. The Administrative Law Judge

("ALJ") failed to develop the record and as a result the ALJ was unable to make a proper RFC

determination.

## BACKGROUND

### I. Procedural Background

On March 2, 2015, Plaintiff applied for DIB in connection with disability allegedly

commencing on March 1, 2015. TR. at 21.[1] The Social Security Administration ("SSA") denied

---

[1] "TR" refers to the Certified Administrative Record filed at ECF No. 14. Pagination follows original pagination in
the Certified Administrative Record.

Plaintiff's claims on May 12, 2015. *Id.* As a result, Plaintiff filed a written request for a social security hearing before an ALJ.[2] *Id.*

ALJ Sharda Singh commenced the social security hearing on May 15, 2017. Plaintiff, represented by counsel, appeared and testified at the hearing. *Id.* The ALJ rendered her decision on July 19, 2017, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.* at 23-26. On March 23, 2018, the SSA Appeals Council denied Plaintiff's request to reconsider the ALJ's decision. Subsequently, the Commissioner deemed the decision as final. *Id.* at 1-4.

## II. Plaintiff's Background

### A. Non-Medical Evidence

Plaintiff was born on July 7, 1963. TR. at 37. At the time of the hearing, Plaintiff was 5'7" tall and weighed 192 pounds. *Id.* Plaintiff has a high school diploma and holds certificates in writing and time management. *Id.* at 38-42. She is also a licensed real estate agent. *Id.* Plaintiff lived with her husband and two adult sons at the time of the hearing. *Id.* at 36-37. Plaintiff also testified that she is no longer employed. Plaintiff testified that in 2014 she started doing clerical work for a temp agency at WIHD (the "Agency") on an almost full-time basis (i.e., 30-35 hours a week). *Id.* at 40-48. At some point in 2015 Plaintiff cut back her hours at the Agency when the pain from her back began to radiate to her legs. *Id.* at 42. Plaintiff's duties at the Agency included: filing papers, organizing filing cabinets, and scanning documents. Plaintiff testified that she stopped working for the Agency in approximately July 2016 due to her alleged disability. *Id.* at 40-42.

---

[2] When a claimant requests a hearing before an ALJ, the ALJ makes an independent disability determination, such determination becomes the Social Security Commissioner's final disability determination.

Plaintiff also testified that she worked as a real estate agent part-time since 2000 but stopped around the time she stopped working at the Agency. *Id.* at 43-45. While Plaintiff worked as a real estate agent, she testified that her daughter worked with her because she could not do certain tasks on her own. *Id.* Specifically, her daughter showed clients properties and performed computer work. *Id.* Plaintiff further testified that she previously worked in accounts receivable at KLM Cargo from 2000 until 2005. *Id.* at 44-45. As a KLM Cargo employee, Plaintiff testified that she received and processed documents on the computer and ordered and stocked office supplies. Plaintiff testified that she could not work a similar job now because of her inability to sit for several hours or lift heavy objects. *Id.*

Plaintiff testified that she drives and attends church weekly where she occasionally helps with the children's choir. *Id.* at 55-57. Plaintiff also frequently reads and watches television, but she testified that she cut back on these activities because they induce her vertigo. *Id.* at 243-4. Plaintiff testified that she accompanies her husband grocery shopping once or twice a month and helps with household chores, but her husband does most of the household chores such as cooking, washing the dishes and laundry. *Id.* at 54-55. Plaintiff further testified that lifting her arms to do her hair is painful and sitting in a hair dresser's chair for long periods of time is painful as well. She also had trouble lifting her left leg to get dressed and to get into the shower. *Id.*

## B.  Plaintiff's Alleged Disability

Plaintiff alleges that she became disabled due to lumbar radiculopathy, degenerative disc disease, and vertigo. Tr. 221. In Plaintiff's initial application to the Social Security Administration, she indicated that her back pain makes her unable to sit without pain at work, even with the aid of two pillows. Plaintiff reported that she stood up often while she worked

3

because walking was less painful than sitting. *Id.* at 240. Plaintiff explained that sitting is the most painful postural while standing can cause her leg to become numb, and that the pain affects her ability to focus or complete activities. *Id.* at 244-45. Plaintiff stated she felt the "radiating" pain from her back to her legs for most of the day. *Id.* at 247-48. Plaintiff stated she does not currently see a doctor for her back pain, but she uses lidocaine patches and takes pain pills and muscle relaxers when the pain gets "really bad". *Id.* at 47-52. Plaintiff stated that these medications never totally relieve the pain and cause upset stomach and light headedness. Plaintiff also complained of bursitis in her left hip and left knee and foot pain. *Id.* at 51-52.

Additionally, Plaintiff testified that she is unable to work due to vertigo. Plaintiff said she experiences bouts of vertigo approximately three to four times per month and each bout lasts one to two days. *Id.* at 45-47, 49. Plaintiff said she takes Meclizine and has had crystal realignment to treat her vertigo. *Id.* at 49-51.

Finally, Plaintiff explained to the ALJ that these problems limit her to lifting no more than seven pounds and carrying even less; sitting and standing for only 10 to 15 minutes before experiencing pain and walking only two to three city blocks. *Id.* at 52-53. Plaintiff also testified she has difficulties bending, kneeling, crouching, and climbing stairs. *Id.* at 53-55, 61-62.

### C.     Treating Source Medical Evidence in the Record

Plaintiff received treatment at White Plains Hospital and WestMed Medical Group from April 2014 to July 2017 for her back pain, vertigo, hip bursitis, and foot pain. Relevant medical records are summarized below.

### i.     Plaintiff's Medical Evidence Before Alleged Disability Date

Since the record contains a significant amount of evidence occurring before Plaintiff's alleged disability onset date, this evidence is reviewed and considered only so far as it

demonstrates the longitudinal history of Plaintiff's impairments and relates to Plaintiff's abilities and limitations during the period of alleged disability.

Beginning in May 2001, Plaintiff suffered from knee pain and ultimately had surgery on her right knee by Dr. Young Don Oh ("Dr. Oh") on September 28, 2001. Tr. at 323-28. In June 2006 Plaintiff also started to complain of left knee problems. *Id.* at 337. In March 2007 Plaintiff fell on ice and as a result was treated for neck problems. In April 2007 Plaintiff also complained of headaches but reported they were much improved by March 2008. *Id.* at 339- 447, 363. In June 2007 Plaintiff got a Magnetic Resonance Imaging ("MRI") of her cervical and thoracic spine which showed herniated discs at C5-6, C7-T1, T1-2 and T2-3 with multi-level degenerative disc disease but no spinal cord or nerve root impingement. *Id.* at 355. In July 2008 Plaintiff started complaining of lower back pain and she received trigger point injections in her upper back (trapezius), lower back and hip. *Id.* at 369, 375.

Plaintiff reported that her back pain subsided temporarily, but returned in January 2011. *Id.* at 382. On March 4, 2011 Plaintiff had a second MRI of her spine which revealed no herniation, but showed degenerative disc disease at L4-5, a disc bulge at L5-S1 and facet degenerative changes at both levels without any nerve root impingement or spinal stenosis (narrowing). *Id.* at 386.

On February 20, 2014 Plaintiff visited Dr. Oh for her back pain. Upon examination, Dr. Oh found a positive straight leg raising test along with limited range of motion in the neck and the lower back. *Id.* at 390-92. On March 10, 2014 Plaintiff had a third MRI of her spine which showed no change from the 2011 test. *Id.* at 396.

Plaintiff was not treated for spinal issues again until November 10, 2014, when she was examined by Dr. Brenda Damico. Dr. Damico found that Plaintiff had tenderness over the

sacroiliac joint, full range of extremity motion, a positive straight leg raising test, and a normal neurological examination. Tr. at 282. Dr. Damico prescribed Toradol and Flexeril. *Id.* at 281-82. On November 11, 2014 Plaintiff saw pain management specialist Dr. Joseph Cole, and he administered trigger point injections in the right and left lumbar paraspinal muscles at the L4-5 and L5-S1 levels to treat the muscle spasm found there. *Id.* at 399-403.

On December 30, 2014 Plaintiff was seen for back pain that radiated to her left leg. During this visit, Plaintiff reported that the epidural injections reduced the pain by 30% and that she could sit for "longer periods of time now." *Id.* at 404. Examination showed continued spasm and tenderness in both the cervical and lumbar paraspinal muscles. *Id.* at 406.

In April 2014 Plaintiff was treated by Dr. Yung, an ENT specialist at White Plains Hospital for ear pain. Tr. at 279-80. Dr. Yung determined Plaintiff had a deviated septum and prescribed medication. *Id.* at 283.

### ii. Plaintiff's Spinal Treatment During Alleged Disability Period

**Dr. Oh, of WestMed**

On March 3, 2015, Plaintiff was treated by Dr. Oh at WestMed for lower back pain that Plaintiff described as radiating down her left leg. Dr. Oh determined that Plaintiff had a positive straight leg raising test, but her motor strength, sensation, and reflexes were intact, and she was in no acute distress. Tr. at 408. Dr. Oh diagnosed Plaintiff with degenerative disc disease of the lumbar spine with radiculopathy and prescribed Robaxin and a Medrol pack. Tr. at 409.

**Dr. Cole, of WestMed**

On October 15, 2015, Plaintiff was treated by Dr. Cole at WestMed, for complaints of lower back pain. Tr. at 422-26. Examination reflected normal findings but noted that Plaintiff had a mild restriction in lumbar range of motion and tenderness in the lumbar psoas major

6

muscle. *Id.* at 425. Dr. Cole advised Plaintiff to continue taking Medrol and Naproxen and to

come back to see him to consider regular epidural injections and physical therapy if her pain

worsened. *Id.* at 426. On July 12, 2016 Plaintiff saw Dr. Cole for her back pain and he recorded

the same findings as in October 2015. *Id.* at 440-44. He prescribed Cyclobenzaprine, advised

Plaintiff to do at home exercises, and discussed the possibility of an additional epidural injection.

*Id.* at 444.

**Dr. Joseph Valletta, of WestMed**

On October 26, 2015, Plaintiff saw podiatrist Dr. Joseph Valletta, at WestMed, for left

heel pain. Tr.at 427-29. Dr. Valletta diagnosed Plaintiff with plantar fasciitis and advised her to

rest, use walking shoes, and ice her heel. *Id.* at 429, 430-38.

### iii. Plaintiff's Vertigo Treatment During the Alleged Disability Period

**Dr. Richard Yung, of Allergy Associates, LLP**

On July 8, 2015, Plaintiff saw Dr. Richard Yung at ENT and Allergy Associates, LLP,

with complaints of hyposomia, dysgeusia, dizziness, earache, and nasal congestion. Tr. at 296-

97. Dr. Yung administered a nasal endoscopy which revealed mostly normal findings and

prescribed Flonase and Meclizine. *Id.* at 299-302. Dr. Yung recommended a neurology referral

and ordered blood work and a brain MRI. *Id.* at 300-01. Pending the results of the blood work

and the MRI, Dr. Young guessed that the dizziness was likely caused by vestibular migraines.

Plaintiff did not get the recommended blood work. *Id.* at 294. An August 7, 2015 brain MRI was

unremarkable. *Id.* at 306, 418.

On April 9, 2017, Plaintiff went to White Plains Hospital and was prescribed medications

for a vertigo episode and a urinary tract infection. Tr. at 461. On April 18, 2017, Plaintiff

returned to Dr. Yung for her dizziness, nasal congestion, and ear pain. *Id.* at 454-57. Dr. Yung

performed an Epley maneuver to relieve the vertigo and discussed a deep head hanging

maneuver with Plaintiff. *Id.* at 456.

**Dr. Berman, of WestMed**

On August 5, 2015, Plaintiff saw neurologist Dr. Jeffrey Berman, at WestMed, for

complaints of dizziness and syncope *Id.* at 414-17. Examination of Plaintiff reported normal

findings. *Id.* at 415-16. Dr. Berman ordered an electroencephalogram ("EEG"). Tr. 416 The EEG

was completed on September 12, 2015 and was normal. *Id.* at 420.

Plaintiff saw Dr. Berman again on April 19, 2017, where she reported feeling much better

since Dr. Yung performed the Epley maneuver on April 18, 2017. *Id.* at 445-47. Examination

revealed normal findings and Dr. Berman noted that Plaintiff had been experiencing only "mild

bouts of vertigo." *Id.* at 445-46.

In May 2017, Plaintiff received a prescription for physical therapy to treat her low back

pain and left hip bursitis. *Id.* at 448-49.

### iv. Additional Medical Evidence Submitted to Appeals Council Subsequent to the ALJ's Decision

On August 3, 2017, following the ALJ's decision, Plaintiff submitted an MRI of her

lumbar spine to the Appeals Council who incorporated the document into the record. Tr. at 17.

The MRI, like the 2014 one, showed that Plaintiff had degenerative disc disease at L4-L5 and

L5-S1, but had no central spinal stenosis or neural foraminal narrowing. *Id.*

### D. Medical Opinions at the Hearing

#### i. Consultative Examiner

At SSA's request, Dr. Barbara Akresh, a consultative examiner, conducted an internal

medical examination and issued a report on April 27, 2015. Tr. at 286-90. Dr. Akresh obtained a

detailed medical history from Plaintiff including records and treatment for back pain and

8

Plaintiff's alleged functional limitations resulting from such pain. Dr. Akresh also received information on Plaintiff's vertigo and hypertension. Plaintiff stated the vertigo caused lightheadedness but was relieved with medications and she took no medication for her hypertension. *Id.* at 286-87.

On the date of examination, Dr. Akresh noted that Plaintiff was in no acute distress, had a normal gait and stance, was unable to walk on her heels and toes, could squat half of full holding onto a table, used no assistive device, did not need help changing for the examination or getting on and off of the examination table, and was able to rise from a chair without difficulty. Tr. at 288. Examination of Plaintiff's skin, lymph nodes, head, face, eyes, ears, nose, throat, neck, chest, lungs, heart, and abdomen were normal. *Id.* at 288-89. Additional examination of Plaintiff's lumbar spine reflected paraspinal tenderness on the left L5-S1 area and on the right L3-L4 area, decreased range of motion, and a positive straight leg raising test on the left leg. *Id.* at 289. Examination of Plaintiff's cervical spine was normal, and she had full range of motion of her shoulders, elbows, forearms, wrists, hips, knees, and ankles. *Id.* Plaintiff's joints were stable and non-tender. The neurologic examination revealed Plaintiff's deep tendon reflexes were physiologic, she had no sensory deficit, and she had full strength. Examination of Plaintiff's extremities revealed no edema or muscle atrophy. Plaintiff declined a lumbosacral x-ray. *Id.*

Dr. Akresh diagnosed Plaintiff with hypertension, chronic low back pain with bilateral radiculopathy, history of vertigo and syncope, hypercholesterolemia, status postarthroscopic surgery of right knee, history of a herniated disc in her cervical spine, headaches, and temporomandibular joint syndrome. Tr. at 289-90. Dr. Akresh opined that Plaintiff had moderate limitations in her ability to lift and carry heavy objects secondary to the chronic low back pain

and history of a herniated cervical disc, and marked limitations in her ability to be in a situation where she might develop an episode of vertigo or syncope and injure herself or others. *Id.* at 290.

### ii. Vocational Expert Testimony

At Plaintiff's May 2017 hearing, Vocational Expert ("VE") Debra Dupree testified to Plaintiff's work and its requirements in the economy. *Id.* at 65- 69. The ALJ asked Ms. Dupree to consider a hypothetical person who could perform light work, with the following additional limitations: lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk for four hours, and sit for up to six hours in an eight-hour workday; unable to climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, crawl, stoop, kneel, and crouch; and avoid hazards such as unprotected heights. *Id.* at 67. The VE stated that the hypothetical person could perform Plaintiff's past relevant work as an accounting clerk (Dictionary of Occupational Titles ("DOT") (4th ed. rev'd 1991) Job Code No. 216.482-010), which is a job performed at the sedentary exertional level in the national economy. *Id.* at 66-67. The VE further explained that Plaintiff could sit for six hours of the eight-hour workday. *Id.* at 68.

## LEGAL STANDARD

### I. Judicial Review of the Commissioner's Determination

A district court reviews a Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine if substantial evidence supports the ALJ's decision and whether the ALJ applied the correct legal standard. *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

Under the substantial evidence standard, a district court can only reject an ALJ's found facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Essentially, this Court must afford the ALJ's determination considerable deference and may not "substitute its own judgment for that of the [ALJ], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted).

## II.     The ALJ's Determination of Disability

### A.  Definition of Disability

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "[t]he impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

### B.  The ALJ's Five-Step Analysis of Disability Claims

The ALJ uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act. *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4). First, the ALJ determines whether the claimant is employed. *Curry*, 209 F.3d at 122. Second, if the claimant is unemployed, the ALJ considers whether the

claimant has a "severe impairment" that "significantly limits his physical or mental ability to do basic work activities." *Id.* Third, if the ALJ suffers from such an impairment, the ALJ determines whether that impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of the Social Security Act regulations, meaning it conclusively requires a determination of disability. *Id.*; *see also* 20 C.F.R., Part 404, Subpart P, App'x 1. If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ("RFC") to perform her past work. *Curry*, 209 F.3d at 122. Finally, if the claimant is unable to perform his past work, the ALJ determines whether there is other work which the claimant could perform. *Id.*

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and 'bears the burden of proving his or her case at steps one through four.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). At step five, however, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560)).

### III. The Commissioner's and the ALJ's Decision

First, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since her originally alleged onset date of March 1, 2015.

Second, the ALJ concluded that Plaintiff has the severe impairments of vertigo and hypertension, and the non-severe impairment of degenerative disc disease of the cervical and lumbar spine.

Third, the ALJ ruled Plaintiff does not have a severe impairment that meets or medically

equates to any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Fourth, the ALJ determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, the ALJ concluded Plaintiff is limited to simple, repetitive work, with only occasional stooping, crawling, kneeling and crouching and no climbing ladders, scaffolds, ramps or stairs. *Id.* at 848.

Because the ALJ determined Plaintiff was not disabled within the meaning of the Act, the ALJ did not proceed to step five.

Based on this assessment, the ALJ determined that Plaintiff is capable of performing her past relevant work as an accounting clerk and was not under a disability, as defined in the Social Security Act, at any time from March 1, 2015, the originally alleged onset date, through the date of the decision *Id.* at 855-56.

## DISCUSSION

Plaintiff asserts that the ALJ's decision was legally erroneous and not supported by substantial evidence. Specifically, Plaintiff contends the administrative record contains no functional assessment of Plaintiff's physical impairments. Plaintiff presents four arguments: (1) the ALJ failed to fully develop the record by not soliciting additional medical opinions or re-contacting the Commissioner's consultative examiner; (2) the ALJ did not support her RFC determination with substantial evidence; (3) the ALJ failed to consider the severity of spinal impairments and did not include resulting limitations in the RFC; and (4) the ALJ formed an improper credibility analysis.

### I.    The ALJ Failed to Properly Developed the Record

Plaintiff's first argument is two-fold. First, Plaintiff argues that the ALJ failed to properly develop the record because it does not contain a treating source opinion nor a functional

assessment by Plaintiff's treating physicians or the consultative examiner. Second, because the ALJ failed to properly develop the record, Plaintiff contends the ALJ's RFC determination was improper. Defendant argues the ALJ fully developed the record and the absence of a medical source opinion did not render the administrative record incomplete. On the contrary, Defendant argues, the ALJ's RFC determination is supported by the treatment notes, the consultative examiner's opinion, the conservative nature of the care Plaintiff received and Plaintiff's daily activities. The Court disagrees.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The record must be "complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." *Roman v. Colvin*, No. 15CIV4800LGSJCF, 2016 WL 4990260, at *7 (S.D.N.Y. Aug. 2, 2016), *report and recommendation adopted*, No. 15CIV4800LGSJCF, 2016 WL 4919960, (S.D.N.Y. Sept. 14, 2016) (citing 20 C.F.R. § 416.913(e)) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). "The RFC is an assessment of the most [the claimant] can still do despite [his or her] limitations" 20 C.F.R. § 404.1545(a)(1) and is assessed using all the relevant evidence in [the] case record." *Id. See also Tankisi v. Commr. of Social Sec.*, 521 F App'x 29, 33 (2d Cir. 2013) (internal quotations omitted). Typically, a claimant's treating physician opinion is given more weight than a consultative or non-examining physician's opinion because the treating physician is likely "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, there is no treating source opinion from any of Plaintiff's treating physicians in the record, nor is there evidence to suggest the ALJ requested such information. While the

Second Circuit has held that it is not "*per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician," *Sanchez v. Colvin*, 2015 U.S. Dist. LEXIS 20812, at *12 (S.D.N.Y. Feb. 20, 2015) (citing *Tankisi*, 521 F. App'x at 33-34; *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013)), "for an ALJ to make a disability determination without seeking any treating physician opinion, there must be no obvious gaps in the administrative record, and the ALJ must possess a complete medical history." *Hooper v. Colvin*, 199 F. Supp. 3d 796, 814 (S.D.N.Y. 2016) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)) (internal quotations omitted). In determining whether a medical source opinion is necessary, such that there are "obvious gaps" in the record without one, courts in the Second Circuit consider the "circumstances of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record." *Sanchez*, 2015 U.S. Dist. LEXIS 20812 at *5 (citing *Tankisi*, 521 F. App'x at 33-4)).

Plaintiff correctly argues that the ALJ failed to develop the record. Thus, the incomplete record made the ALJ unable to make a proper RFC determination. While a treating source opinion is not required, the circumstances of this case necessities either a treating source opinion or a complete consultative opinion. Furthermore, the relevant administrative record is not comprehensive because it only contains 481 pages, where the typical record contains 700-1000 plus pages. *Duffy v. Commr. of Social Sec.*, No. 17-cv-3560 (GHW) (RWL) 2018 U.S. Dist. LEXIS 145686, at *31-32 (S.D.N.Y. Aug. 24, 2018) *also* (ruling a 445-page administrative record was not robust enough to allow the ALJ to make a determination without a treating source opinion, given the treating notes did not assess the Plaintiff's ability to function in a work

setting); *see also Bluman v. Berryhill*, No. 15-CV-627, 2017 U.S. Dist. LEXIS 144831, 2017 WL 3910435, at *2 (W.D.N.Y. Sept. 7, 2017).

While the number of pages in the record is not determinative and the record details Plaintiff's complaints, the treatments she received, and test results, the pages do not shed light on Plaintiff's ability to work despite these complaints. In other words, the record lacks a functional assessment by a treating physician or consultative examiner. *See Nunez v. Berryhill*, 2017 U.S. Dist. LEXIS 130106, at *61-63 (S.D.N.Y. Aug. 11, 2017) (noting that one important consideration in examining the sufficiency of the record is whether the treating physician assessed the claimant's limitations and finding remand required when the record contained physicians' findings on plaintiff's sensation, range of motion, strength and gait, but did not contain a functional assessment); *see also Hernandez v. Comm'r of Soc. Sec.*, No. 1:13-CV-959 GLS/ESH, 2015 WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015) (finding *Tankisi* distinguishable where the record lacked any medical source opinion regarding claimant's functional limitations); *see also Downes v. Colvin*, No. 14-CV-7147, 2015 U.S. Dist. LEXIS 95605, 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015) (same).

The parties acknowledge there is no functional assessment in the record and the ALJ recognized that there is "no opinion in the record which supports the conclusion that the claimant is unable to work." The lack of treating source opinion did not necessarily render the record incomplete on its own. However, coupled with the fact that there is no functional assessment by a medical expert, the lack of a treating source opinion creates an "obvious gap in the record". The ALJ was obligated to develop the record but failed to do so.

Furthermore, "because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has

improperly substituted his own opinion for that of a physician, and has committed legal error."
*Felder v. Astrue*, No. 10-CV-5747 DLI, 2012 WL 3993594, at *13 (E.D.N.Y. Sept. 11, 2012).
*See e.g. Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Here, the ALJ concluded that
Plaintiff is able to perform light work, such that she is able "to carry 20 pounds occasionally and
10 pounds frequently, and can stand, walk, and sit for up to 6 hours per 8 hour day". However,
no medical expert provided an opinion to support these conclusions. Rather, the ALJ made this
determination by giving some weight to the consultative physical examination by Dr. Akresh and
then went on to explain that the Plaintiff's RFC "is supported by the minimal diagnostic testing
results, the conservative nature of her care," and her ability to engage in a "wide range of daily
activities," such as going to church twice a week, helping out with the children's choir at work,
and watching television. In doing so, the ALJ discredited Plaintiff's credibility and subjective
assessments of her pain and limitations. The Court does not address whether the ALJ made an
improper credibility assessment. However, the Court recognizes that a claimant's ability to sit
while engaging in certain life activities does not necessarily mean the claimant can meet the
requirements to work while sitting. *See Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y.
2000) (finding that activities of daily living did not support the inference that plaintiff was
capable of prolonged sitting); *see also Baker v. Comm'r of Soc. Sec.*, No. 5:14-CV-1243, 2016
U.S. Dist. LEXIS 22132, 2016 WL 769708, at *n.6 (N.D.N.Y. Feb. 1, 2016). Since there is no
direct or indirect medical evidence to support the ALJ's RFC determination, the ALJ improperly
substituted her opinion for a physician's.

## II. The ALJ's Disability Determination Was Not Supported by Substantial Evidence

Similarly, Plaintiff argues that the ALJ's finding that Plaintiff was able to perform light

work with additional limitations was not supported by substantial evidence because: (1) Dr. Akresh's medical opinion, the only medical opinion in the record, is incomplete; (2) and the ALJ does not explain how the medical evidence in the record supports the RFC found. Plaintiff argues that because of the deficiencies in the consultative opinion, the ALJ was required to recontact Dr. Akresh. Defendant argues that the ALJ was not obligated to re-contact Dr. Akresh because her opinion is not vague and the ALJ could rely on the lack of indicators that Plaintiff had limited ability to sit, walk and stand, as evidence that she found no such limitations. As mentioned, the treatment notes in the record are insufficient for the ALJ to make an RFC determination. Absent a treating source's medical opinion, the ALJ lacks a functional assessment. Plaintiff also correctly argues that the consultative examiner's opinion was incomplete because her report was vague, and therefore, the ALJ was required to recontact Dr. Akresh. 20 C.F.R. § 220.62 explains that when reviewing reports of consultative examinations, consider: "(1) whether the report provides evidence which serves as an adequate basis for decision making in terms of the impairment it assesses," and "if the report is inadequate or incomplete, [contact] the medical source who performed the consultative examination, … and ask that the medical source furnish the missing information or prepare a revised report." *Id.*

Moreover, despite Defendant's contentions that Dr. Akresh's opinion was not vague and re-contacting her was unnecessary, this court recently found Dr. Akresh's opinion regarding another claimant similarly vague and the ALJ's failure to recontact her for clarification constituted reversible error. *See e.g. Stellmaszyk v. Berryhill*, No. 16cv09609 (DF) 2018 U.S. Dist. LEXIS 170357, at *69 (S.D.N.Y. Sep. 28, 2018). Just as she did for the claimant in *Stellmaszyk*, Dr. Akresh opined that Plaintiff has "moderate limitations in her ability to lift and carry heavy objects," diagnosed her with several medical conditions, and "marked limitations in

her ability to be in a situation where she might develop an episode of syncope or vertigo." Tr. at 290. However, Dr. Akresh did not explain how these findings limit Plaintiff's ability to sit, stand or walk. *See also Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000); *accord Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013)) (concluding an ALJ may not rely on opinions that employ terms such as "moderate" and "mild" absent additional information because such terms are "so vague as to render [them] useless").

Indeed, 20 C.F.R. § 404.1519n(c)(6) does not require a medical source statement to explain the claimant's degree of limitation in sitting, standing, and walking. However, because one of Plaintiff's chief complaints regarded her inability to sit for prolonged periods, coupled with Plaintiff's testimony that she progressively cut her work hours before quitting work altogether due to her inability to sit, this case warranted additional medical opinions explaining her sitting limitations. Moreover, Dr. Akresh only examined Plaintiff once. Furthermore, the examination took place only two months into the alleged on-set disability period, which was over two years prior to the hearing and ALJ decision. Therefore, Dr. Akresh's assessment could not consider any medical evidence from after that date.

Dr. Akresh also indicated that more information should be obtained from the MRIs, suggesting she did not intend her report to be conclusive. Indeed, Dr. Akresh's opinion is the only medical opinion in the record. The fact that the record does not contain additional opinions regarding Plaintiff's functional limitations suggests the ALJ needed to clarify Dr. Akresh's incomplete assessment. While the ALJ partially summarized the treatment notes in the record, she did not explain how they translated to an RFC for light work as opposed to another type of work. Therefore, the Court finds Dr. Akresh's opinion too vague and, thus, incomplete.[3]

---

[3] The Court will not address Plaintiff's arguments that (1) the ALJ did not properly assess her credibility and (2) she failed to consider her spinal impairments since the case faces remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is

**GRANTED**; Defendant's Cross Motion for Judgment on the Pleadings is **DENIED**; and the

Commissioner's decision is **REVERSED.**


**SO ORDERED.**

**Dated: September 23, 2019**

**New York, New York**

_____
**HON. ANDREW L. CARTER, JR.**
**United States District Judge**